THOMAS et al. v. CENTRAL OF GEORGIA RAILWAY COMPANY.

SIMMONS, C. J. One who deliberately goes upon a railroad track in front of an approaching train, thinking that she can cross before the train reaches her, and miscalculating its speed because she is in front of it, can not recover for injuries resulting from being run down by the train, although the company's servants may have been negligent in running at a high rate of speed at that point, and also in failing to check the speed of the train at a public road which crossed the track between the place where the train was when first seen by the plaintiff and the point at which the injury occurred. The above facts being set out in a declaration, a demurrer thereto was properly sustained; for it is clear, from the allegations made, that the plaintiff, by the exercise of ordinary care, could have avoided the injury. See Hopkins, Pers. Inj., § 77; *Central R. Co. v. Smith,* 78 *Ga.* 694; *Southern Ry. Co. v. Blake,* 101 *Ga.* 217; *Hopkins v. So. Ry. Co.,* 110 *Ga.* 85.

*Judgment affirmed.* All the Justices concur.

Argued October 4, — Decided October 15, 1904.

Action for damages. Before Judge Johnston. City court of Waynesboro. March 14, 1904.

The suit was by the husband and children of Fannie Thomas, on account of her homicide; and they excepted to the sustaining

of a general demurrer.　They alleged, that on March 19, 1903, she was struck by the engine of a passenger-train of the defendant, at Munnerlyn.　She had started, in pursuit of her business, from a store on the eastern side of the railroad track to another store on the western side.　She followed a footpath just north of the railroad station, generally and constantly used by the public in crossing from one side of the track to the other, which use was with the consent of the defendant company, which kept the crossing in repair for the purpose of such use.　A few feet south of the southern end of the railroad station was a public-road crossing, about fifty-four paces from the path before mentioned.　Munnerlyn was the trading point for a number of people, there being two or three stores on the one side of the railroad track and two or three on the other.　There was a post-office where many people received mail; and frequently many people were at the railroad station.　It had been a regular stopping-place for the defendant's passenger-trains for a third of a century, and their stopping to deliver and receive mail was regular and usual.　The midday northbound passenger and mail train, that struck Fannie Thomas, was twenty-five or thirty minutes behind its schedule time when approaching the station, and ran over the public crossing and footpath and through the village at a speed of forty to forty-five miles per hour, while the regular speed not at stations was not over twenty-five or thirty miles an hour, there being no compliance with the law as to checking the speed and having the train under control.　Fannie Thomas was in the exercise of ordinary care and diligence in entering on the track, because, while the train was approaching the station, she could not, owing to its direct approach on a straight track, tell that it was running at an unusual or very fast rate of speed; and she had the right to feel sure and confident that it would not run, at the place before described, at a great and reckless rate.　She did not know that it was behind time, and she had a right to expect that defendant would comply with the law in checking the speed so as to have the train under control.　She also had the right to feel sure that the train would stop at the station.　In any of these events she would have had ample time to cross the track in safety, being within a few inches of being safely across when the engine struck her.　The excessive speed was unknown to her, and in the exercise

of ordinary diligence could not have been discovered by her, owing to the train approaching her on a straight track, which rendered it impossible for her to correctly estimate its speed. This train regularly carried express. Fannie Thomas was in a store, trading with Reeves, a clerk who was also the express agent, and who told her that, being such agent, he must meet the train and could not wait on her longer. From this statement she had the right to believe the train would stop, and started across the track to another store to purchase an article that Reeves did not have, saying that after she made this purchase she would return and finish trading.

*Brinson & Davis*, for plaintiffs.

*Lawton & Cunningham* and *S. H. Jones*, for defendant.